## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN BUSHANSKY, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>VWR CORPORATION, MANUEL A.H. BROCKE-BENZ, HARRY M. JANSEN KRAEMER, JR., NICHOLAS W. ALEXOS, ROBERT L. BARCHI, EDWARD A. BLECHSCHMIDT, ROBERT P. DECRESCE, PAMELA FORBES LIEBERMAN, TIMOTHY P. SULLIVAN, and ROBERT J. ZOLLARS,<br><br>Defendants. | Case No.<br><br><u>CLASS ACTION</u><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of VWR Corporation ("VWR" or the "Company") against VWR and the members of VWR's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9 and to enjoin the vote on a proposed transaction, pursuant to which VWR

will be acquired by Avantor, Inc. ("Avantor"), through its wholly-owned subsidiary Vail Acquisition Corp ("Merger Sub") (the "Proposed Transaction").

2.      On May 5, 2017, VWR issued a press release announcing it had entered into an Agreement and Plan of Merger dated May 4, 2017 (the "Merger Agreement") to sell VWR to Avantor for $33.25 in cash per share of VWR common stock (the "Merger Consideration"). Pursuant to the Merger Agreement, Merger Sub will merge with and into the Company, with the Company continuing as the surviving corporation.  The Proposed Transaction is valued at approximately $6.4 billion.

3.      On June 2, 2017, VWR filed a Preliminary Proxy Statement on Schedule 14A (the "Proxy") with the SEC.  The Proxy, which recommends that VWR stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things:  (i) VWR's financial projections, relied upon by VWR's financial advisor Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by BofA Merrill Lynch; and (iii) the background process leading to the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of the above-referenced sections of the Exchange Act, as VWR stockholders need such information to cast a fully-informed vote or make an appraisal decision in connection with the Proposed Transaction.

4.      In short, unless remedied, VWR's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, most of the documents are electronically stored, and the evidence exists.  VWR is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of VWR.

9.      Defendant VWR is a Delaware corporation with its principal executive offices located at 100 Matsonford Road, Radnor, Pennsylvania 19087.  VWR is a global independent provider of product and service solutions to laboratory and production customers.  The Company's common stock is traded on the NASDAQ under the ticker symbol "VWR."

10.     Defendant Manuel A.H. Brocke-Benz ("Brocke-Benz") has been President and Chief Executive Officer ("CEO") of the Company since January 2013 and a director of the

Company since 2012.  Defendant Brocke-Benz previously served as interim CEO from July 2012 to January 2013.

11.     Defendant Harry M. Jansen Kraemer, Jr. ("Kraemer") is Chairman of the Board and has been a director of the Company since 2007.

12.     Defendant Nicholas W. Alexos ("Alexos") has been a director of the Company since 2007.

13.     Defendant Robert L. Barchi ("Barchi") has been a director of the Company since 2006.

14.     Defendant Edward A. Blechschmidt ("Blechschmidt") has been a director of the Company since 2007.

15.     Defendant Robert P. DeCresce ("DeCresce") has been a director of the Company since 2007.

16.     Defendant Pamela Forbes Lieberman ("Forbes Lieberman") has been a director of the Company since 2009.

17.     Defendant Timothy P. Sullivan ("Sullivan") has been a director of the Company since 2007.

18.     Defendant Robert J. Zollars ("Zollars") has been a director of the Company since 2006.

19.     Defendants Brocke-Benz, Kraemer, Alexos, Barchi, Blechschmidt, DeCresce, Lieberman, Sullivan and Zollars are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20.     Avantor is a Delaware corporation with its principal executive offices located at 3477 Corporate Parkway, Center Valley, Pennsylvania 18034.  Avantor is a global supplier of ultra-high-purity materials for the life sciences and advanced technology markets.

21.     Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Avantor.

22.     New Mountain Capital L.L.C. ("New Mountain") is a private equity investment firm of which Avantor and Merger Sub are affiliates.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own VWR common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

24.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

25.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of May 24, 2017, there were approximately 131,798,400 shares of Company common stock issued and outstanding.  All members of the Class may be identified from records maintained by VWR or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

26.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

27.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

29.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Company Background and Strong Financial Outlook

30.     VWR is a leading global independent provider of product and service solutions to laboratory and production customers.  The Company has significant market positions in Europe and North America, as well as operations in Asia-Pacific.  VWR connects customer sites with laboratory product suppliers across multiple industries and geographies.  The Company offers a broad portfolio of branded and private label laboratory products, a full range of value-added services and custom manufacturing capabilities to meet its customers' needs.

31.     VWR's portfolio includes chemicals, reagents, consumables, durable products and scientific equipment and instruments.  VWR complements its branded and private label product portfolio with value-added service offerings marketed under the VWRCATALYST® brand, including sourcing and procurement, logistics, chemical and equipment tracking and sample management.  The Company continues to expand its service offerings to include more complex scientific research support services such as genotyping, bioreactor servicing, and compound management, among others.

32.     In connection with its service offering expansion, on March 22, 2017, VWR announced that it acquired EPL Archives, Inc., an international biorepository services organization.  Commenting on the acquisition, defendant Brocke-Benz stated:

> EPL Archives is a well-known and trusted partner to the majority of the world's largest pharmaceutical customers, including many existing VWR customers . . . . Their portfolio of services will greatly complement VWR's current service offering, as a part of **VWR**CATALYST, allowing us to better serve our customers in achieving their goals by ensuring compliant storage of research, manufacturing and clinical trial materials.

33.     On May 5, 2017, the Company issued a press release announcing its first quarter 2017 financial results.  For the quarter, net sales were $1.14 billion, a $40.8 million increase from the first quarter of 2016.  Operating income was $81.5 million, a $1.8 million increase from the first quarter of 2016.  Adjusted EPS was $0.44, a 10.0% increase from $0.40 in the first quarter of 2016.  Defendant Brocke-Benz commented on the quarter's strong financial results stating:

> The first quarter represents a strong start to the year, bolstered by our solid business momentum in EMEA-APAC and improving performance in the Americas. During the first quarter, organic revenues increased 4.3%, with EMEA-APAC up 8.4%. Our solid revenue momentum, coupled with our adjusted operating income margin expansion, drove strong bottom-line performance.
>
> We recently acquired EPL Archives and MESM, both of which significantly expand and strengthen our VWRCATALYST services platform. With these acquisitions, we continue to build a significant business that provides a compelling

proposition to biopharma customers engaged in clinical trials activities. And earlier in the quarter, we acquired Seastar, a global quality leader in manufacturing ultra-pure acid and base products used for detecting trace elements for environmental, food and semiconductor analysis and testing. These acquisitions are an important part of our strategy to increase customer intimacy and relevance in these key growth areas.

**The Sale Process**

34.     Prior to its engagement by VWR in connection with the Proposed Transaction, and not acting on behalf of VWR, BofA Merrill Lynch held discussions with certain third parties regarding potential strategic alternatives involving VWR.  Between April 2016 and February 2017, BofA Merrill Lynch investment bankers, who were later retained by VWR in connection with the Proposed Transaction, participated in such discussions with 16 parties.  One party, referred to in the Proxy as "Party A," expressed "initial interest at a value that BofA Merrill Lynch thought would be acceptable to VWR stockholders."  Notably, the Proxy fails to disclose the details of Party A's initial interest, including when Party A expressed interest and Party A's proposed price terms.  The Proxy further fails to disclose whether any of the remaining 15 parties expressed interest in an acquisition of the Company and the details thereof and whether any of these 15 parties executed confidentiality agreements with the Company containing standstill provisions that are currently precluding these parties from making a topping bid.

35.     During the week of January 9, 2017, defendants Sullivan and Alexos, who are managing directors at Madison Dearborn Partners, LLC ("MDP"), the controlling equity holder of Varietal Distribution Holdings, LLC ("Varietal")[1], met with Party A to discuss Party A's interest in the Company.

---

[1] As of May 24, 2017, Varietal held approximately 34.7% of the outstanding shares of VWR common stock and has entered into a voting and support agreement in connection with the Proposed Transaction.

36.     On January 24, 2017, VWR entered into a nondisclosure agreement with Party A.

37.     On February 8, 2017, the Company received a proposal from Party A to acquire VWR at a price between $28.00 and $30.00 per share.

38.     Following discussion, on February 13, 2017, the Board determined it was not prepared to engage in a transaction with Party A based on its proposal.  The Board also instructed management to prepare five-year financial projections of the Company to be shared with Party A and any other interested bidders.

39.     At a February 21-22, 2017 meeting, the Board questioned management about certain of the assumptions and sensitivities that management was preparing to factor into its preliminary preparation of the five-year financial projections.

40.     On March 24, 2017, Party A informed BofA Merrill Lynch it would not increase its offer above $30.00 per share and ceased communication with VWR regarding its independent interest in acquiring the Company.

41.     During the week of March 27, 2017, Matt Holt ("Holt") and Andre Moura ("Moura"), managing directors of New Mountain, contacted defendant Alexos regarding Avantor's interest in an acquisition of the Company.  Moura also discussed with defendant Alexos that Party A had previously initiated discussions and engaged with New Mountain regarding Party A providing equity financing for a possible strategic business combination of Avantor and VWR.

42.     On March 30, 2017, VWR received an indication of interest letter from Avantor and New Mountain at a potential acquisition price of $30.00 per share.  Based on the Board's discussions following Party A's proposal, defendant Kraemer informed Avantor and New Mountain that the offer price was not a basis for further discussions.  The next day, the Company

received a revised indication of interest letter from Avantor and New Mountain at a potential acquisition price of $30.00 to $32.00 per share.

43.     On April 2, 2017, VWR entered into a nondisclosure agreement with Avantor and New Mountain.

44.     On April 6, 2017, the Company authorized Avantor and New Mountain to contact Party A to discuss the transaction as a potential equity financing source.

45.     Following negotiation, on April 13, 2017, the Company received an indication of interest letter from Avantor and New Mountain reflecting an offer price of $33.25 per share, accompanied by an equity commitment letter from Party A, and a request for a 30-day exclusivity period.

46.     Over the next few weeks, the parties conducted due diligence and began negotiating the merger agreement, which included a go-shop period.

47.     On May 3, 2017, Moura informed BofA Merrill Lynch that Party A would not be participating in the equity financing.

48.     That day, following publication of market speculation of a sale of VWR to New Mountain, the trading price of VWR common stock increased *above* the negotiated merger price, but Avantor refused to increase its offer price.

49.     On May 4, 2017, BofA Merrill Lynch rendered its fairness opinion.  The Board approved the Merger Agreement and instructed BofA Merrill Lynch to commence the go-shop process on May 5, 2017 by contacting potential bidders.  Later in the evening on May 4, 2017, the parties executed the Merger Agreement and related agreements.

**The Proposed Transaction**

50.     On May 5, 2017, VWR and Avantor issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

CENTER VALLEY, Pa. and RADNOR, Pa., May 5, 2017 -- Avantor, a global supplier of ultra-high-purity materials for the life sciences and advanced technology industries, and VWR (NASDAQ: VWR), the major global independent provider of product, supply chain, and service solutions to laboratory and production customers, today announced that they have entered into a definitive agreement under which Avantor will acquire VWR for $33.25 in cash per share of VWR common stock, reflecting an enterprise value of approximately $6.4 billion. The purchase price represents an approximate 17% premium to the unaffected closing stock price on May, 2, 2017, the day prior to the start of market speculation regarding a potential sale of VWR. The purchase price also represents an approximate 20% premium to the 30 trading day volume weighted average price (VWAP), and an approximate 24% premium to the 90 trading day VWAP of VWR common stock as of May 2, 2017.

*Combined Company Uniquely Positioned to Serve Customers Globally*

Avantor's acquisition of VWR will create a major consumables-focused solutions and services provider to the high-growth life sciences and advanced technologies industries, as well as education, government, and research institutions across the globe. The acquisition will build on each company's strengths, including Avantor's cGMP manufacturing processes, significant exposure to emerging markets and VWR's significant position across the Americas and Europe. The combined company will be a vertically integrated organization, serving a global customer base in all areas of their activities, from research through production - a unique advantage in a fast growing marketplace.

Michael Stubblefield, Chief Executive Officer of Avantor, said, "Avantor's acquisition of VWR is both highly compelling and complementary. We will bring together our well-known expertise in ultra-high-purity materials and customized solutions with VWR's global scale, unparalleled channel access, and deep customer relationships. Collectively, this will create a larger, stronger and more diversified company with significantly enhanced scale and product breadth. The global customers that we plan to serve in a more high-touch manner will immediately benefit from the combination, as we will provide end-to-end solutions that offer increased quality, effectiveness, and productivity."

Mr. Stubblefield continued, "Avantor and VWR share a dedication to enabling the advancement of science worldwide and a commitment to quality, safety, innovation and customer service. Both of our companies have highly qualified employees who are dedicated to helping our customers succeed. We look forward to welcoming VWR's more than 10,000 employees to Avantor and to our continued success as one team upon the successful completion of the transaction. We expect that this acquisition will expand opportunities for our employees, as part of a larger, high-growth enterprise."

\* \* \*

The agreement followed the unanimous approval by the Board of Directors of both VWR and Avantor. Completion of the transaction is subject to the expiration of a "go-shop" period, the expiration or termination of the applicable waiting period under Hart-Scott-Rodino Antitrust Improvements Act and European Commission approval, obtaining any required clearance, consent or approval under applicable foreign antitrust laws, VWR shareholder approval, and other customary closing conditions. Varietal Distribution Holdings, LLC, the largest shareholder of VWR comprised of, among other parties, Madison Dearborn Partners (MDP), which has been a significant shareholder of VWR since 2007, and certain officers and directors of VWR, has signed a voting and support agreement committing it to vote in favor of the transaction, representing approximately 34.8% of the total issued and outstanding shares of common stock of VWR.

Following the closing of the acquisition, which is expected in the third quarter of 2017, New Mountain Capital will be the lead shareholder of the combined company, and MDP will not own any shares of common stock of the combined company. The combined company will be led by Mr. Stubblefield upon closing.

**<u>Insiders' Interests in the Proposed Transaction</u>**

51.     VWR insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and VWR's public stockholders.

52.     Company insiders stand to reap substantial financial benefits for securing the deal with Avantor.  Pursuant to the Merger Agreement, each Company option and restricted stock unit will be converted into the right to receive cash payments.  The following table summarizes the cash payments VWR's directors and executive officers stand to receive in connection with their vested and unvested equity awards in the Proposed Transaction:

| Name | Number of Shares Subject to Vested Options | Number of Shares Subject to Unvested Options | Weighted Average Exercise Price Per Share ($) | Consideration Payable in Respect of Vested Options ($) | Consideration Payable in Respect of Unvested Options ($) | Number of RSUs | Consideration Payable in Respect of RSUs ($) | Total ($) |
|---|---|---|---|---|---|---|---|---|
| Manuel Brocke-Benz Director, President and Chief Executive Officer | 373,304 | 1,126,541 | 24.60 | 3,229,080 | 9,744,580 | 27,792 | 924,064 | 13,897,743 |
| Gregory L. Cowan Senior Vice President and Chief Financial Officer | 117,702 | 333,213 | 24.43 | 1,038,132 | 2,938,939 | 7,827 | 260,243 | 4,237,318 |
| Mark T. McLoughlin Senior Vice President and President Americas Lab and Distribution Services | 88,933 | 247.475 | 24.38 | 788,896 | 2,195,103 | 5,945 | 197,671 | 3,181,810 |
| Dr. Nils Clausnitzer Senior Vice President and President EMEA-APAC Lab and Distribution Services | 49,923 | 168.657 | 27.53 | 285,560 | 964,718 | 5,945 | 197,671 | 1,447,949 |
| George Van Kula Senior Vice President, Human Resources, General Counsel and Secretary | 85,756 | 237.591 | 24.37 | 761,513 | 2,109,835 | 5,921 | 196,973 | 3,068,321 |
| Gerard J. Christian Senior Vice President and Chief Global Business Services | 46,607 | 102.276 | 23.60 | 445,563 | 977,760 | 2,371 | 78,833 | 1,502,157 |
| Ulf Kopper Senior Vice President, VWR Services | 46,607 | 98.672 | 23.58 | 450,590 | 954,158 | 2,151 | 71,521 | 1,476,369 |
| Douglas Pitts Vice President and Corporate Controller | 45,723 | 86.602 | 23.22 | 488,602 | 868,818 | 1,578 | 52,480 | 1,379,888 |
| Harry M. Jansen Kraemer, Jr. Chairman of the Board | 18,847 | 3.770 | 21.00 | 230,876 | 46,183 | 6,258 | 208,079 | 485,137 |
| Nicholas W. Alexos Director | 18,847 | 3.770 | 21.00 | 230,876 | 46,183 | 6,258 | 208,079 | 485,137 |
| Robert L. Barch Director | 18,847 | 3.770 | 21.00 | 230,876 | 46,183 | 6,258 | 208,079 | 485,137 |
| Edward A. Blechschmidt Director | 10,847 | 3.770 | 21.00 | 109,026 | 46,183 | 6,258 | 208,079 | 423,087 |
| Robert P. DeCresce Director | 18,847 | 3.770 | 21.00 | 230,876 | 46,183 | 6,258 | 208,079 | 485,137 |
| Pamela Forbes Lieberman Director | 18,847 | 3.770 | 21.00 | 230,876 | 46,183 | 6,258 | 208,079 | 485,137 |
| Timothy J. Sullivan Director | 18,847 | 3.770 | 21.00 | 230,876 | 46,183 | 6,258 | 208,079 | 485,137 |
| Robert J. Zollars Director | 10,847 | 3.770 | 21.00 | 210,076 | 46,183 | 6,258 | 208,079 | 405,137 |

53.    Moreover, if they are terminated in connection with the Proposed Transaction, VWR's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation.  Notably, defendant Brocke-Benz *alone* stands to receive *over $25 million* if he is terminated in connection with the Proposed Transaction.  The following table sets forth the golden parachute compensation the Company's named executive officers stand to receive:

| Name | Cash ($) (1) | Equity ($) (2) | Pension/ Non-Qualified Deferred Compensation ($) | Perquisites/ Benefits ($) (3) | Tax Reimbursement ($) (4) | Other ($) (5) | Total ($) (6) |
|---|---|---|---|---|---|---|---|
| Manuel Brocke-Benz | 5,299,713 | 9,842,998 | — | 10,489 | 5,582,249 | 5,000,000 | 25,735,449 |
| Gregory L. Cowan | 1,656,699 | 2,949,575 | — | 9,545 | 2,000,058 | 2,125,000 | 8,740,877 |
| Mark T. McLoughlin | 1,497,401 | 2,198,747 | — | 13,645 | 1,064,790 | 1,000,000 | 5,774,583 |
| Dr. Nils Clausnitzer | 1,246,246 | 1,399,151 | — | — | — | 1,000,000 | 3,645,397 |
| George Van Kula | 1,545,190 | 2,113,089 | — | 13,645 | 1,705,957 | 2,125,000 | 7,502,881 |

## The Proxy Contains Material Misstatements or Omissions

54.     The defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to VWR's stockholders.   The Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting or appraisal decision in connection with the Proposed Transaction.

55.     Specifically, as set forth below, the Proxy fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) VWR's financial projections, relied upon by VWR's financial advisor, BofA Merrill Lynch; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by BofA Merrill Lynch; and (iii) the background process leading to the Proposed Transaction.   Accordingly, VWR stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

### *Material Omissions Concerning VWR's Financial Projections*

56.     The Proxy fails to disclose material information relating to the Company's financial projections provided by VWR's management and relied upon by BofA Merrill Lynch for its analyses.

57.     For example, the Proxy states that "BofA Merrill Lynch performed a discounted cash flow analysis of VWR to calculate the estimated present value of the standalone unlevered, after-tax free cash flows that VWR was forecasted to generate from the second fiscal quarter of

2017 through fiscal year 2022 based on the VWR management forecasts." Proxy at 40.  The Proxy, however, fails to disclose the Company's unlevered, after-tax free cash flows for the projection period and further fails to disclose the line items utilized to calculate the Company's unlevered, after-tax free cash flows (including stock-based compensation expense) as well as the definition of unlevered, after-tax free cash flows.

58.     In addition, with respect to VWR management's projections, the Proxy discloses non-GAAP metrics including Adjusted EBITDA[2] and Adjusted EPS[3], but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to GAAP.  The omission of the aforementioned line item projections renders the non-GAAP projections included in the Proxy materially misleading and incomplete.

59.     The omission of this material information renders the Proxy false and misleading, including, *inter alia*, the following sections of the Proxy: (i) "Certain Prospective Financial Information" and (ii) "Opinion of the Company's Financial Advisor."

***Material Omissions Concerning BofA Merrill Lynch's Financial Analyses***

---

[2] With respect to Adjusted EBITDA, the Proxy fails to disclose the following line items for the years 2017 through 2022: (i) net income or loss, (ii) interest expense, net of interest income, (iii) income tax provision or benefit, (iv) depreciation and amortization, (v) net foreign currency remeasurement gains or losses relating to financing activities, (vi) losses on extinguishment of debt, (vii) equity offering costs, (viii) charges associated with restructurings and other cost reduction initiatives, (ix) impairment charges, (x) gains or losses upon business disposals, (xi) share-based compensation expense, and (xii) other costs or credits that are either isolated or cannot be expected to recur with any regularity or predictability.  *See* Proxy at 36.

[3] With respect to Adjusted EPS, the Proxy fails to disclose the following line items for the years 2017 through 2022: (i) net income, (ii) amortization of acquired intangible assets, (iii) net foreign currency remeasurement gains or losses relating to financing activities, (iv) impairment charges, (v) losses on extinguishment of debt, (vi) equity offering costs, (vii) income from changes to estimated fair value of contingent consideration and (viii) other costs or credits that are either isolated or cannot be expected to recur with any regularity or predictability and (ix) assumed incremental income tax impact.  *Id.*

60.    The Proxy describes BofA Merrill Lynch's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of BofA Merrill Lynch's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, BofA Merrill Lynch's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on BofA Merrill Lynch's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to VWR's stockholders.

61.    For example, with respect to BofA Merrill Lynch's *Selected Publicly Traded Companies Analysis*, the Proxy fails to disclose the objective selection criteria BofA Merrill Lynch used to select the companies, as well as the observed company-by-company financial benchmarking metrics examined by BofA Merrill Lynch.

62.    With respect to BofA Merrill Lynch's *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the objective selection criteria BofA Merrill Lynch used to select the transactions, as well as the observed transaction-by-transaction enterprise values and financial benchmarking metrics examined by BofA Merrill Lynch.

63.    With respect to BofA Merrill Lynch's *Discounted Cash Flow Analysis*, as discussed above, the Proxy fails to disclose the unlevered after-tax free cash flows for the second fiscal quarter of 2017 through fiscal year 2022 based on the VWR management forecasts utilized by BofA Merrill Lynch in this analysis, the definition of unlevered after-tax free cash flows and the line items used to calculate the Company's unlevered free cash flows.  In addition, the Proxy fails to disclose (i) the inputs used to derive the range of discount rates of 7.75% to 9.25%; and (ii) the implied perpetuity growth rates resulting from the analysis.

64.     The omission of this material information renders the Proxy false and misleading, including, *inter alia*, the following sections of the Proxy: (i) "Certain Prospective Financial Information" and (ii) "Opinion of the Company's Financial Advisor."

65.     Without such undisclosed information, VWR stockholders cannot evaluate for themselves whether the financial analyses performed by BofA Merrill Lynch were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which BofA Merrill Lynch's opinion and analyses should factor into their voting or appraisal decision in connection with the Proposed Transaction.

***Material Omissions Concerning the Background Process***

66.     The Proxy also fails to disclose or misstates material information relating to the background process leading up to the Proposed Transaction and potential conflicts of interest.

67.     For example, the Proxy states:

> [p]rior to the effective date of the merger, some or all of the Company's executive officers may discuss or enter into agreements, arrangements or understandings with Avantor or its affiliates regarding the executive officers' continuing employment or compensation and benefits, including equity incentive arrangements, on a going-forward basis following completion of the merger. No such new agreements, arrangements and understandings ***have been entered into*** as of the date of this proxy statement."

Proxy at 46-47 (emphasis added).  However, the Proxy fails to disclose any employment-related discussions and negotiations that occurred between VWR and Avantor's executive officers.  The Proxy further fails to disclose whether any of Avantor's prior proposals or indications of interest mentioned management retention or the potential for Board members to sit on the combined company's board of directors.

68.     In addition, according to the Proxy, "[t]he Company has established management retention programs ("retention programs") covering each of its executive officers that provide for a bonus in a fixed amount (the "retention bonus"), between $500,000 and $5,000,000, as well as excise tax gross-up payments . . . ." Proxy at 45.  The Proxy completely fails to disclose any discussions and negotiations that occurred with respect to the retention programs, including who participated in all such communications, when they occurred, and their content.

69.     Further, the Proxy states:

> [f]rom time to time prior to its engagement by VWR to act as its financial advisor in connection with the merger, [BofA Merrill Lynch], not acting on behalf of VWR and without access to non-public information about VWR, held discussions with certain third parties as part of its ordinary course investment banking dialogue regarding potential strategic alternatives involving VWR. VWR understands that, between April 2016 and February 2017, BofA Merrill Lynch investment bankers who were later retained to advise VWR in connection with the Transactions had participated in such discussions with 16 parties, including both financial and strategic potential bidders, and that, of this group, initial interest at a value that BofA Merrill Lynch thought would be acceptable to VWR stockholders was expressed by only one party and a limited partner of such party (together, "Party A"), which was a potential financial bidder that Varietal had not contacted in 2014.

Proxy at 27.  However, the Proxy fails to disclose (i) the details of Party A's "initial interest at a value that BofA Merrill Lynch thought would be acceptable to VWR stockholders," including the timing and price terms of Party A's initial interest; (ii) how many of the remaining 15 parties expressed interest in an acquisition of VWR and the details thereof, including whether any of these 15 parties executed confidentiality agreements with the Company containing standstill provisions that are currently precluding these parties from making a topping bid; (iii) whether BofA Merrill Lynch performed any follow up work for Party A or any of the other 15 parties following the presentations; and (iv) when BofA Merrill Lynch first informed VWR of its presentations to 16 parties regarding potential strategic alternatives involving VWR.

70.     The Proxy also discloses that in connection with the Board's April 28, 2017 engagement of BofA Merrill Lynch, BofA Merrill Lynch provided the Board with disclosure memoranda concerning, among other things, the materials BofA Merrill Lynch prepared for discussion with Party A.  The Proxy fails to disclose (i) the date(s) BofA Merrill Lynch participated in discussions with Party A concerning VWR as a potential strategic/acquisition opportunity; and (ii) whether, in connection with the discussion materials BofA Merrill Lynch prepared for Party A, BofA Merrill Lynch performed a discounted cash flow analysis of VWR and, if so, the implied per share equity value reference ranges for VWR that resulted from the analysis, the multiples BofA Merrill Lynch utilized to calculate the terminal value and the discount rate range BofA Merrill Lynch applied in its analysis.

71.     Moreover, the Proxy states:

[t]he consummation of the Transactions will constitute a change of control for purposes of the Income Tax Receivable Agreement, dated as of October 7, 2014, by and between the Company and Varietal (the "TRA"). On May 4, 2017, the Company and Varietal entered into a Letter Agreement (the " TRA Letter Agreement "), pursuant to which, among other things, the Company and Varietal have agreed that the Change of Control Payment (as defined therein) will be an amount equal to $56,238,010 to be paid by the Company to Varietal on the closing date (the " TRA Payment ").

Proxy at 52.  The Proxy fails to set forth information concerning any negotiations related to the TRA Letter Agreement, including who participated in all such negotiations and when those negotiations occurred.  As defendants Sullivan and Alexos are managing directors of Varietal's controlling equity holder, VWR stockholders would find such information material as it provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

72.     The Proxy further fails to disclose whether any of the indications of interest the Company received included assumptions for the TRA or otherwise took into account the

approximate $50 million TRA Payment Varietal will receive upon consummation of the Proposed Transaction.

73.     Finally, with respect to the February 21-22, 2017 Board meeting, the Proxy fails to disclose the details of the Board's questions to VWR management "about certain of the assumptions and sensitivities that management was preparing to factor into its preliminary preparation of the five-year financial projections." Proxy at 28.

74.     Defendants' failure to provide VWR stockholders with the foregoing material information renders the statements in the "Background of the Merger" and "Interests of the Company's Directors and Executive Officers in the Merger" sections of the Proxy false and/or materially misleading and constitutes a violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

75.     Plaintiff repeats all previous allegations as if set forth in full.

76.     During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements made, in

light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

77.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the sales process for the Company, the financial analyses performed by the Company's financial advisors, and the actual intrinsic standalone value of the Company.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

78.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

79.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

80.     Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

81.     Plaintiff repeats all previous allegations as if set forth in full.

82.     The Individual Defendants acted as controlling persons of VWR within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of VWR, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the

SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

83.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

84.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of the Proxy.

85.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

86.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

87.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the

Exchange Act.  As a direct and proximate result of defendants' conduct, VWR's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of VWR, and against defendants, as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to VWR stockholders;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  June 12, 2017

**BRODSKY & SMITH, LLC**

Evan J. Smith
Marc L. Ackerman
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
Tel: (610) 667-6200
Fax: (610) 667-9029
E-mail: esmith@brodskysmith.com
E-mail: mackerman@brodskysmith.com

*Attorneys for Plaintiff*

**OF COUNSEL**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*

EXHIBIT "A"

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned certifies as follows:

1.      I have reviewed a draft of the complaint in this matter against VWR Corporation ("VWR") and others and would authorize the filing thereof, if necessary.

2.      I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this lawsuit.

3.      I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      I have been, at all relevant times stated in the complaint, the holder of 200 shares of VWR common stock.

5.      I have not sought to serve or served as a class representative under the federal securities laws in the last three years, other than as listed below (if any):

*In re QR Energy LP Unitholder Litigation*, Lead Case No. 4:14-cv-02195 (S.D.T.X.)

6.      I will not accept any payment for serving as a representative party beyond the undersigned's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.

*stephen bushansky*
stephen bushansky (Jun 9, 2017)

Stephen Bushansky